## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### *Maryland State Government*

The General Assembly was the State of Maryland's legislative body. The bicameral legislature was composed of the Senate, with 47 Senators, and the House of Delegates, with 141 Delegates.

Maryland state law required certain State officials, employees, and candidates for office to file annual financial disclosure statements.

The Maryland State Ethics Commission, as directed in General Provisions Article § 5-205, administers the provisions of the Maryland Public Ethics Law.

### *The Defendant*

**TAWANNA P. GAINES** ("**GAINES**") was a Maryland State Delegate from December 2001 through the present, representing District 22, which covered portions of Prince George's County, Maryland. Over her years in the House of Delegates, **GAINES** held many committee assignments, including vice-chair of the Appropriations Committee and Assistant Majority Leader. As an elected official, **GAINES** owed a duty of honest services to the State of Maryland, Prince George's County, and their citizens.

### *The Maryland State Board of Elections and Regulated Campaign Committees*

The Maryland State Board of Elections regulated state and local elections in Maryland and was charged with ensuring compliance with both state and federal election laws as it related to elections that occurred within their respective jurisdictions. The State Board of Elections maintained a database of campaign donations for state and local election campaigns and enforced Maryland's campaign finance laws.

The "Friends of Tawanna P. Gaines" (hereinafter "FTPG") candidate committee was the name of the campaign finance entity for the **GAINES** campaign for Maryland State Delegate from the date of its establishment in June 2002 through the present. FTPG was a regulated state election campaign committee. FTPG held a bank account at Bank of America, a financial institution insured by the Federal Deposit Insurance Corporation. Separately, **GAINES** held and had exclusive control over a PayPal account used to accept electronic donations to FTPG. The FTPG PayPal account was not disclosed in State campaign finance filings.

Rev. August 2018

Under Maryland Code, Election Law, § 13-218, the campaign treasurer (and not the candidate) was responsible for maintaining the assets of a campaign finance entity. Similarly, under § 13-218(b), the campaign finance entity's assets "may be disbursed only if they have passed through the hands of the treasurer" and only "in accordance with the purposes of the entity." Candidates, including **GAINES**, were prohibited from personally making disbursements from a campaign finance entity.

In addition, under § 13-220, a campaign finance entity "shall deposit all funds received in a designated campaign account" and, subject to certain exceptions inapplicable to the conduct described herein, may only make disbursements from its bank account by check or electronic method—that is, specifically *not* by cash withdrawal.

Under § 13-221, the treasurer "shall keep a detailed and accurate account book of all assets received, expenditures made, and obligations incurred by or on behalf of the entity," and "[e]ach expenditure made from a campaign account shall be supported by a receipt." Campaigns for state offices in Maryland were required to file certain campaign finance reports with the Maryland State Board of Elections.

### *The Scheme to Defraud*

From at least in or about January 2015 through in or about April 2018, **GAINES** knowingly and willfully devised and intended to devise a scheme and artifice to defraud FTPG and the campaign contributors of FTPG, and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, with the intent to defraud and knowledge of the scheme's fraudulent nature ("the wire fraud scheme").

It was part of the wire fraud scheme that **GAINES** would solicit campaign funds from contributors on the representations and premise that the funds would be used to facilitate her reelection and maintain her leadership positions within the Maryland General Assembly. It was further part of the wire fraud scheme that **GAINES** would accept donations from certain campaign contributors into the FTPG PayPal account. It was further part of the wire fraud scheme that **GAINES**, without authorization and in violation of Maryland campaign finance laws, was a signatory on the FTPG PayPal account and would utilize campaign funds from the FTPG account for her personal use. It was further part of the scheme that **GAINES** would receive campaign contributions and convert them to her own use without causing the contributions to be identified on reports made to the Maryland State Board of Elections.

After receiving the funds, **GAINES** defrauded certain campaign contributors and FTPG by converting certain FTPG campaign funds to her personal use. For example, **GAINES** used campaign funds from the FTPG PayPal account to pay for personal expenses, such as fast food (in the State of Maryland and the State of Illinois), hair styling, dental work, a cover for a pool at her personal residence, an Amazon Fire TV stick, Amazon Prime membership, and various payments to Amazon.com (in the State of Washington). In addition, from at least January 2015 through at least November 2017, in violation of Maryland campaign finance law, **GAINES** withdrew approximately $1,952.75 in cash from various ATM machines, which caused the use of interstate wires by way of wire communications sent to bank computer systems outside the State of

Maryland.  Moreover, from at least September 2017 through August 2018, **GAINES** electronically transferred at least $2,061.55 from the FTPG PayPal account directly to her personal checking account at SunTrust Bank.

**GAINES** took these actions knowingly and with the intent to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. The total amount of actual and intended loss resulting from **GAINES**'s involvement was at least **$22,565.03**.

SO STIPULATED:

_____
Thomas P. Windom
Assistant United States Attorney

_____
Tawanna P. Gaines
Defendant

_____
William C. Brennan, Jr., Esq.
Counsel for Defendant